# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHLEEN J. AYARZA, | ) |
|                Plaintiff, | ) |
| v. | )   Case No. CIV-06-370-SPS |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
|                Defendant. | ) |

## OPINION AND ORDER

The claimant Kathleen J. Ayarza requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work in the national economy . . ." *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 114 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show she does not retain the residual functional capacity (RFC) to perform her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work she can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whether the record detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

## Claimant's Background

The claimant was born on August 3, 1944, and was 61 years old at the administrative hearing. She has a high school education plus two years of college and has worked in the past as a bookkeeper. The claimant alleges she has been disabled since May 2, 2003, because of osteoarthritis, nodules, Dupuytren's contractures, diabetes, depression, anxiety, and diverticulosis.

## Procedural History

On December 13, 2004, the claimant protectively filed an application for disability insurance benefits and a period of disability under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The application was denied. After a hearing on February 28, 2006, ALJ Lantz McClain found that the claimant was not disabled in a decision dated March 30, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work, *i. e.*, she could lift and/or carry ten pounds, stand and/or walk with normal breaks at least two hours in an eight-hour workday, and sit with normal breaks at least six hours in an eight-hour

workday (Tr. 16). He concluded that the claimant was not disabled because she could return to her past relevant work as a bookkeeper (Tr. 18).

**Review**

The claimant contends that the ALJ erred: (i) by failing at step two to recognize all of her severe impairments; (ii) by failing at step four to include all of her functional limitations in the RFC; and, (iii) by finding at step four that she could return to her past relevant work. The Court finds that the ALJ did commit error in analyzing the claimant's functional limitations, although not as specifically argued by the claimant.

The record reveals that the claimant first complained of pain in her right hand in September 2002. She specifically complained that the fourth digit of her right hand locked up occasionally and had been doing so for four months. Her range of motion was in tact, but slight elevation of the fourth digit of the right hand was detected along with tenderness to palpation along the tendon of the finger. She was assessed with tendonitis and prescribed Bextra (Tr. 141). The claimant returned a few days later and was referred to Dr. B.J. Wroten, M.D. She was examined by Dr. Wroten in November 2002, and he noted that the claimant demonstrated that when she flexed her finger down and straightened it out, it would lock up. He discussed different modes of treatment with her and that surgery was the claimant's best bet (Tr. 155-56). The claimant underwent trigger thumb release, right ring finger surgery in December 2002 (Tr. 151-52). Shortly thereafter, she returned for a follow-up visit with Dr. Wroten. The claimant exhibited soreness, which was not abnormal, and her motion was good. Dr. Wroten advised the claimant to return if she had any problems. In March 2003,

the claimant returned because she had developed a small Dupuytren's nodule where surgery had been performed. She maintained full motion at the site of surgery, but she also was experiencing sensitivity in the left hand in the region of the dorsal sensory branch of the ulnar nerve. She was told to return if it became worse (Tr. 154).

In April 2005, the claimant underwent a consultative examination with Dr. Steven Nussbaum, D.O. Her primary complaint was increased weakness and fatigue in her hands, wrists, and elbows. The claimant reported she could not type or use a calculator because of the lack of strength in her hands and wrists. When she woke up in the morning, her hands were swollen and fatigued rapidly. She reportedly had problems opening bottles and cans because of decreased grip strength. Upon examination, Dr. Nussbaum noted that although the claimant's hands appeared normal, they did "fatigue relatively quickly." He noted the claimant could oppose the thumb to the finger tips and manipulate small objects, but she experienced decreased grip bilaterally for grasping tools such as a hammer (Tr. 162-68). On the same day, the claimant underwent a mental evaluation with Dr. Kathleen Ward, Ph.D. The claimant indicated to Dr. Ward that she had left her previous employment because the company closed. She noted, however, it was uncertain how much longer she would have worked because of her physical impairments, including problems with her eyesight, trigger finger, and nodules (Tr. 158).

The record shows that when the claimant applied for benefits, she noted she was right-handed and because of her problems with her hands, she could no longer use a calculator or type. In her Work History Report, the claimant described past work as a bookkeeper (credit

manager) that involved using machines, tools, and equipment to perform the job and that required eight hours per day of writing, typing, or handling small objects (Tr. 73-74). On her Pain Questionnaire, the claimant reported that she experienced stabbing pain in her fingers, wrists, the palm of her hand, and elbows on a daily basis (Tr. 98-99). During a phone interview with the claimant in March 2005, she indicated that her hands were so painful she could no longer do needle point because she could not grab the fabric or the needle (Tr. 100). At the administrative hearing, the claimant testified that she had Dupuytren's disease and underwent surgery. The claimant continued to have problems with her hands, and no longer had the movement for typing or ten key and had problems gripping objects. Although the claimant could grip a gallon of milk, pain made it very difficult. She was beginning to develop problems with her left hand and foot consistent with Dupuytren's disease (Tr. 229-32).

The ALJ found at step two that the claimant suffered from severe impairments of diabetes and post surgery for release of trigger finger on the fourth digit of the right hand (Tr. 14). The ALJ did not, however, include any limitations on the claimant's use of her hands in the RFC assessment at step four (Tr. 16).

An explanation should be provided when an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]. *See also Givens v. Astrue*, 2007 WL 3046302, *slip op.* at *4 (10th

Cir. Oct. 18, 2007) (noting that without proper explanation the ALJ erred when he "concluded at step two of the analysis that Ms. Givens' depression constituted a severe impairment [and] [t]hat impairment had disappeared from his analysis . . . by the time he reached step five.") [unpublished opinion]. Thus, the ALJ should have explained why the claimant's trigger finger did not call for a corresponding physical limitation in her RFC. The ALJ *did* discuss the claimant's complaints about her hands, *e. g.*, that a nodule formed following surgery, that her hands "fatigue[d] relatively quickly[,]" and that she could no longer type or do ten key because of reduced hand movement, and determined they were "insignificant" because the claimant had not returned to her doctor for treatment when her condition worsened (Tr. 17). But the ALJ did not discuss substantial evidence that was inconsistent with this determination, *e. g.*, the claimant had decreased grip bilaterally when grasping tools such as a hammer (Tr. 167), and she was having trouble doing her past work, which required writing, typing, or handling small objects at least eight hours per day (Tr. 82-83). *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). The ALJ should have explained why he rejected this probative evidence because the bookkeeper job (which he found the claimant could return to) requires frequent reaching, handling, and fingering (DICOT § 210.382-014). He should not, as he appears to have done, simply ignore it as inconsistent with his RFC determination. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th

Cir. 2004) (finding that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("[The] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper."). *See also Taylor v. Schweiker*, 739 F.2d 1240, 1243 (7th Cir. 1984) ("'[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.'"), *quoting Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982).

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ so he can analyze all the relevant evidence. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

**Conclusion**

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 4th day of January, 2008.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**